**ORIGINAL**

# In the United States Court of Federal Claims

No. 15-793C
(Filed: February 24, 2016)

**FILED**

**FEB 24 2016**

**U.S. COURT OF FEDERAL CLAIMS**

```
*****************************************
HERBERT R. FLOYD,                         *
                                          *
           Plaintiff,                     *    Pro Se Plaintiff; Lack of Jurisdiction;
                                          *    Failure to State a Claim; Patent;
                                          *    Statute of Limitations; Application to
v.                                        *    Proceed In Forma Pauperis;
                                          *    28 U.S.C. § 1498; RCFC 12(b)(1);
THE UNITED STATES,                        *    RCFC 12(b)(6)
                                          *
           Defendant.                     *
*****************************************
```

Herbert R. Floyd, Uniondale Long Island, NY, pro se.

William J. Nichols, United States Department of Justice, Washington, DC, for defendant.

**OPINION AND ORDER**

**SWEENEY**, Judge

    On July 27, 2015, Herbert R. Floyd ("plaintiff"), appearing pro se, filed a complaint and an application to proceed in forma pauperis. In his complaint, plaintiff alleges that the New York City Police Department ("NYPD") infringed his patent for keyless vehicle entry fingerprint technology and seeks monetary damages pursuant to 35 U.S.C. § 271 (2012). Defendant filed a motion to dismiss plaintiff's amended complaint and an opposition to plaintiff's application. Because the court lacks jurisdiction over plaintiff's complaint, it is dismissed. In addition, plaintiff's application to proceed in forma pauperis is denied because his complaint is frivolous.

**I. BACKGROUND**

    Plaintiff's one-page complaint, with attachments,[1] includes a copy of his September 2, 2003 patent for a "GOD Fingerprint - Computer Entry technology," an "[i]nvention" that he

---

[1] Plaintiff attaches 31 pages to the complaint, which are not consecutively numbered. Although two pages purport to be "Exhibit B" and "Exhibit C," there is no "Exhibit A," and plaintiff has not identified any other exhibits among the remaining pages, including among the pages that follow "Exhibit C." The court will assign chronological numbers "1" through "31" to the attachments in the order in which they appear. Some of the attached pages appear to be randomly attached, as they are not useful in this proceeding, and plaintiff does not explain their relevance. Specifically, one page features the results of a Google.com search, listing links to

alleges "will provide key-less entry into condominiums, housing Developments, homes, apartment houses, and Businesses, such as Police Precincts for: fingerprinting criminals, thus, using devices that violate Plaintiff's U.S. patent."[2] Compl. 1. The '920 patent includes two independent claims, both of which purport to describe the subject matter of the invention and that require, among other things, a fingerprint-operated system that "unlock[s]" or "start[s]" a vehicle. Id. at 14. The abstract for the '920 patent explains that it is:

> A fingerprint entry and engine starting system, including a computerized video recorder, and transmitter installed in a driver's door of a vehicle housing a transparent shield. The recorder is perpendicular via position under this transparent shield. Since this shield is installed in the vehicle's door handle, a legal user will press the shield upon its left side portion, such as to start the vehicle's engine. As a result, whenever the righthand portion upon the shield is pushed by a legal user, the vehicle's door-locks are freed. This is done when the recorder is actuated whereas a fingerprint of a user is transformed from optical information to computer data when the shield is pressed. This data is transmitted and compared with preset data, such that when this preset data stored in a memory matches with transformed data, coils via actuators for releasing the vehicle's door-locks are actuated. An ignition switch actuates a motor of an engine starter also, as a match is defined, which drives the starter and starts the engine of the vehicle. This is accomplished, when an activating signal is outputted from a CPU. This CPU defines the memory whereby outputting the activating signal only, whenever the shield is pushed by a legal user for actuating two pushbutton switches. Four fingerprint input pushbutton switches outwardly upon the door causes one power window, a heater, a trunk and a hood to be operated also, before entering the vehicle without a key.

Id. at 13. Further, the '920 patent encompasses:

> [a] keyless fingerprint operated lock and ignition on a vehicle door, comprising:

---

websites regarding precincts in New York City. Moreover, another page, labeled 'Technology,' appears to be a printed version of a Wikipedia page describing a "Live scan" device "used for scanning live fingerprints into [an] AFIS [Automated Fingerprint Identification System]" to "match a print." Compl. 12. Still another page is a press release that describes the sale and delivery of a "ClearID2000(TM) electronic fingerprint scanning/capture system to the Campbell County Coroner's office in Gillette, Wyoming" by a company named BSI2000, Inc. Id. at 15. In addition, three pages of the attachment are identical copies of a Rule 7.1 of the Rules of the United States Court of Federal Claims ("RCFC") Disclosure Statement. Because plaintiff is an individual, not a corporation, a RCFC 7.1 disclosure statement is inapplicable. Plaintiff also attaches the charging documents from the Criminal Court of the City of New York for his arrest. The only pertinent pages attached to the complaint are pages 13-31, which appear to comprise plaintiff's patent, Patent Number US 6,614,920 B2 (the "'920 patent"), issued on September 2, 2003.

[2] In evaluating a motion to dismiss a plaintiff's complaint, the court will consider the allegations in the complaint and any documents attached thereto. See Musungayi v. United States, 86 Fed. Cl. 121, 122 n.2 (2009).

a fingerprint sensor mounted on the exterior side of said door for placement of a person's finger; said sensor having a first finger placement surface for unlocking a door, a second finger placement surface for starting said vehicle, an image sensor capturing a fingerprint image when a finger is placed on either of said surfaces, and a transmitter for transmitting said fingerprint image; a vehicle mounted controller receiving said transmitted fingerprint image, comparing said image with a previously stored fingerprint of a person authorized to use said vehicle, and when the comparison yields a match, said controller activating an actuator for unlocking said door when said first finger placement surface is pressed, and activating an actuator for starting said vehicle when said second fingerprint placement surface is pressed.

Id. at 14.

Plaintiff alleges that on June 3, 2007, he had a dispute with an acquaintance, which awakened her cat, causing the cat to scratch her leg. Further, plaintiff avers, his acquaintance called the police, and an NYPD police officer subsequently photographed her leg and arrested plaintiff for assault in the third degree. According to plaintiff, when the police department took his fingerprints, he observed that it used a "computer fingerprinting apparatus embodying [p]laintiff's [p]atented [i]nvention." Id. at 1. Plaintiff further alleges that the Federal Bureau of Investigation ("FBI") operates 56 field offices in major cities throughout the United States, and in San Juan Puerto Rico." Id. He argues that the "U[nited] S[tates]," through such agencies as the FBI, was infringing" his patent, and seeks monetary damages pursuant to 35 U.S.C. § 271. Id.

Defendant filed a motion to dismiss plaintiff's complaint pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims ("RCFC") for lack of subject matter jurisdiction, and pursuant to RCFC 12(b)(6) for failure to state a claim. The motion is fully briefed, and the court deems oral argument unnecessary.

## II. STANDARD OF REVIEW

When considering a motion to dismiss for lack of subject matter jurisdiction pursuant to RCFC 12(b)(1), as with a motion to dismiss pursuant to RCFC 12(b)(6), the court accepts as true all undisputed factual allegations made by the nonmoving party, and draws all reasonable inferences from those facts in the nonmoving party's favor. Westlands Water Dist. v. United States, 109 Fed. Cl. 177, 190 (2013).

### A. RCFC 12(b)(1)

Whether the court has jurisdiction to decide the merits of a case is a threshold matter. See Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94-95 (1998). "Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." Ex parte McCardle, 74 U.S. (7 Wall.) 506, 514 (1868). The parties, or the court, sua sponte, may challenge the existence of subject matter jurisdiction at any time. Arbaugh v. Y&H Corp., 546 U.S. 500, 506 (2006).

A pro se plaintiff's complaint, "'however inartfully pleaded,' must be held to 'less stringent standards than formal pleadings drafted by lawyers' . . . ." Hughes v. Rowe, 449 U.S. 5, 10 n.7 (1980) (quoting Haines v. Kerner, 404 U.S. 519, 520-21 (1972)). However, a pro se plaintiff is not excused from meeting basic jurisdictional requirements. See Henke, 60 F.3d at 799 ("The fact that [the plaintiff] acted pro se in the drafting of his complaint may explain its ambiguities, but it does not excuse its failures, if such there be."). In other words, a pro se plaintiff is not excused from his burden of proving, by a preponderance of the evidence, that the court possesses jurisdiction. See McNutt v. Gen. Motors Acceptance Corp., 298 U.S. 178, 189 (1936); Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746, 748 (Fed. Cir. 1988). The plaintiff cannot rely solely on allegations in the complaint, but must bring forth relevant, adequate proof to establish jurisdiction. See McNutt, 298 U.S. at 189. Ultimately, if the court finds that it lacks subject matter jurisdiction, then it must dismiss the claim. Matthews v. United States, 72 Fed. Cl. 274, 278 (2006); see also RCFC 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

### B. RCFC 12(b)(6)

A claim that survives a jurisdictional challenge remains subject to dismissal under RCFC 12(b)(6) if it does not provide a basis for the court to grant relief. Lindsay v. United States, 295 F.3d 1252, 1257 (Fed. Cir. 2002) ("A motion to dismiss . . . for failure to state a claim upon which relief can be granted is appropriate when the facts asserted by the claimant do not entitle him to a legal remedy."). A motion to dismiss for failure to state a claim upon which relief can be granted pursuant to RCFC 12(b)(6) tests the sufficiency of the complaint. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-56 (2007); see also RhinoCorps Ltd. Co. v. United States, 87 Fed. Cl. 481, 492 (2009) ("A motion made under Rule 12(b)(6) challenges the legal theory of the complaint, not the sufficiency of any evidence that might be adduced."). The United States Supreme Court ("Supreme Court") explained in Twombly the degree of specificity with which a plaintiff must plead facts sufficient to survive such a motion, stating that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." 550 U.S. at 555 (citation omitted). Although a complaint need not contain "detailed factual allegations," id. at 555, it should contain "enough facts to state a claim to relief that is plausible on its face," id. at 570; see also id. at 555 (noting that "factual allegations must be enough to raise a right to relief above the speculative level"). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp., 550 U.S. at 556). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Bell Atl. Corp., 550 U.S. at 546. Indeed, "[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds by Harlow v. Fitzgerald, 457 U.S. 800, 814-19 (1982).

### C. Tucker Act

The ability of the United States Court of Federal Claims ("Court of Federal Claims") to entertain suits against the United States is limited. "The United States, as sovereign, is immune

from suit save as it consents to be sued." United States v. Sherwood, 312 U.S. 584, 586 (1941). A waiver of immunity "cannot be implied but must be unequivocally expressed." United States v. King, 395 U.S. 1, 4 (1969). The Tucker Act, the principal statute governing the jurisdiction of this court, waives sovereign immunity for claims against the United States not sounding in tort that are founded upon the Constitution, a federal statute or regulation, or an express or implied contract with the United States. 28 U.S.C. § 1491(a)(1). However, the Tucker Act is merely a jurisdictional statute and "does not create any substantive right enforceable against the United States for money damages." United States v. Testan, 424 U.S. 392, 398 (1976). Instead, the substantive right must appear in another source of law, such as a "money-mandating constitutional provision, statute or regulation that has been violated, or an express or implied contract with the United States." Loveladies Harbor, Inc. v. United States, 27 F.3d 1545, 1554 (Fed. Cir. 1994) (en banc).

### D. Patent Infringement Under 28 U.S.C. § 1498

As described in 28 U.S.C. § 1498, the United States has waived sovereign immunity and granted this court exclusive jurisdiction to adjudicate patent infringement claims against the federal government "[w]henever an invention described in and covered by a patent of the United States is used or manufactured by or for the United States without license of the owner thereof or lawful right to use or manufacture the same." 28 U.S.C. § 1498(a) (2012); see also Martin v. United States, 99 Fed. Cl. 627, 632–33 (2011) (noting that Section 1498, rather than the Tucker Act, 28 U.S.C. § 1491(a), grants this court jurisdiction over patent infringement claims against the United States). The statute further states that "the use or manufacture of an invention described in and covered by a patent of the United States by a contractor, a subcontractor, or any person, firm, or corporation for the Government and with the authorization or consent of the Government, shall be construed as use or manufacture for the United States." 28 U.S.C. § 1498(a). The unauthorized "use or manufacture of an invention" under Section 1498(a) is analogous to a taking of property under the Fifth Amendment of the United States Constitution. See Motorola, Inc. v. United States, 729 F.2d 765, 768 (Fed. Cir. 1984); see also Hughes Aircraft Co. v. United States, 29 Fed. Cl. 197, 208 (1993). In this respect, the government "takes" a non-exclusive and compulsory license to any United States patent "as of the instant the invention is first used or manufactured by [or for] the [g]overnment." Decca Ltd. v. United States, 640 F.2d 1156, 1166 (Ct. Cl. 1980).

### E. Statute of Limitations

A cause of action under 28 U.S.C. § 1498 accrues "when the accused [instrumentality] is first available for use." Unitrac, LLC v. United States, 113 Fed. Cl. 156, 160 (2013) (internal quotation marks omitted), aff'd, 589 Fed. App'x 990 (Fed. Cir. 2015) (unpublished). Section 1498(a) "authorizes the Government to take, through exercise of its power of eminent domain, a license in any United States patent." De Graffenried v. United States, 228 Ct. Cl. 780, 783 (1981) (internal quotation marks omitted). The United States Court of Claims, whose precedent is binding on this court, has held that "each individual member of the universe of infringing devices . . . can be taken only once in its lifetime, and if that taking occurs prior to the six-year period which immediately precedes the filing of the lawsuit in the Court of Claims, then recovery as to that particular device is barred forever by 28 U.S.C. § 2501." Starobin v. United States,

662 F.2d 747, 749-50 (Ct. Cl., 1981) (footnote omitted). Any "ongoing infringement is irrelevant to this Court's jurisdiction in the context of the statute of limitations . . . [as] the Government's alleged ongoing infringement cannot justify jurisdiction simply because at least one act of infringement has occurred within the statute of limitations period." Unitrac, 113 Fed. Cl. at 160-61.

### III. DISCUSSION

The court lacks subject matter jurisdiction in this case because plaintiff's claims are outside of the applicable statute of limitations. In addition, plaintiff alleges that he is entitled to damages under 35 U.S.C. § 271, a statute not within this court's jurisdiction. To the contrary, that statute addresses a private actor's liability for patent infringement. Indeed, in order to invoke this court's jurisdiction for patent infringement against the United States, the appropriate statute is 28 U.S.C. § 1498, which specifically provides a remedy in this court "when the United States infringes a patent, or when another person infringes a patent acting on behalf of the United States." Sheridan, 2015 WL 5845301, at *2; see also FastShip LLC v. United States, 122 Fed. Cl. 71, 78 (2015) (holding that "[g]iven that the government has waived sovereign immunity only for the compulsory taking of a non-exclusive patent license, government liability under 28 U.S.C. § 1498 diverges from private liability under 35 U.S.C. § 271").

Here, plaintiff admits that he learned of the alleged infringement on June 3, 2007, subsequent to his arrest and fingerprinting by the NYPD, when he observed that the NYPD's fingerprinting technology purportedly violated his patent. However, plaintiff did not file a complaint in this court until July 27, 2015, more than six years later. If the United States had infringed his patent between July 27, 2009 and July 27, 2015—or the six-year period before he filed his complaint—a claim for infringement would be timely. Yet because the NYPD's "apparatus" that plaintiff alleges "embod[ied]" his invention was first available for use by at least June 3, 2007, the day that he learned of it, his patent was purportedly infringed on that date. Compl. 1. Consequently, because the '920 patent was allegedly infringed before July 27, 2009—or in other words, before the six-year period immediately preceding the filing of his complaint in this court—his claims are barred by the statute of limitations. Accordingly, because plaintiff's cause of action falls outside of the six-year statute of limitations, the court lacks subject matter jurisdiction over plaintiff's claims and they must be dismissed.

Alternatively, this court lacks subject matter jurisdiction to entertain plaintiff's claims because he alleges harm arising from the NYPD's alleged violation of his patent. The NYPD is separate and distinct from the federal government, and plaintiff cannot maintain an action in the Court of Federal Claims against a non-federal defendant. The NYPD operates under the administration of the City of New York, which, in turn, is part of the State of New York. State and local agencies and police departments are separate from the United States federal government. Although plaintiff asserts that the "U.S. infringed" his patent, he does not provide any allegations that indicate that any aspect of the federal government replicated his invention or injured him in any other way. While he notes that the FBI is one type of federal agency, he does not aver that the FBI used or directed the use of a device that infringed his patent. Accordingly, plaintiff's failure to properly allege that he was harmed by the United States precludes this court from exercising subject matter jurisdiction over his claims. See Parker v. United States, 93 Fed.

Cl. 159, 163 (2010) (holding that the "United States cannot be held liable" in the Court of Federal Claims for the "action of a state or local government entity").

Further, to the extent that plaintiff does allege that the FBI infringed his patent, his complaint fails to state a claim. Plaintiff relies upon 35 U.S.C. § 271, which, as described above, does not apply to the federal government. Moreover, plaintiff does not provide any allegations indicating how the FBI infringed his patent, or that the NYPD was authorized by or was otherwise acting for the federal government. See Sheridan v. United States, No. 2015-5073, 2015 WL 5845301, at *2 (Fed. Cir. Oct. 8, 2015) (holding that for a patent infringement claim to survive in the Court of Federal Claims, a plaintiff must allege that the infringement occurred by the United States or an actor who was authorized by or acting for the federal government); see also Carrier Corp. v. United States, 208 Ct. Cl. 678, 683 (1976) (holding that because the government did not require a third party "to use a particular type of equipment," the government did not "authorize[] or consente[]" to the use or manufacture of that equipment). Consequently, plaintiff fails to state a claim that the United States infringed his patent.[3]

Even if plaintiff had relied upon the proper statute, 28 U.S.C. § 1498(a), plaintiff would be without a remedy. Under 28 U.S.C. § 1498(a), a patent owner has a right to recover only if the "invention described in and covered by [the] patent . . . is used or manufactured by or for the United States." Here, plaintiff's patent does not in any way relate to the alleged infringing activity. The '920 patent refers to a fingerprint vehicle entry and engine starting system, which in no way relates to the fingerprinting technology used by law enforcement agencies for criminal suspects. In his complaint, plaintiff does not even mention a vehicle security system when describing the NYPD's device and the purported infringement. And, there is no indication on the '920 patent that it encompasses a computer fingerprinting device that is unconnected to a vehicle security system. Ultimately, the device used by the NYPD to obtain fingerprints

---

[3] As noted earlier, plaintiff attaches a press release to his complaint indicating that the "ClearID2000(TM) electronic fingerprint scanning/capture system" was sold to the "Campbell County Coroner's office in Gillette, Wyoming" by a company named BSI2000, Inc. Compl. 15. Although the press release describes that this "system electronically prints the standard FBI fingerprint FD258 'Blue' and FD249 'Red' hardcopy cards that are used across the nation for background checks and scans by law enforcement agencies, school districts, numerous government agencies, contractors, and many others," plaintiff provides no allegations indicating how the system relates to his patent. Id. Further, although the system uses standard FBI fingerprints, there is no indication in the press release or in plaintiff's complaint that the system was developed or is being used by the federal government. Rather, the press release states that the system was sold to a local agency. Moreover, even if plaintiff had properly alleged that this system infringed his patent and that it is used by the federal government, he does not indicate that it was first available for use after July 27, 2009, or within the statute of limitations period. Although the press release attached to plaintiff's complaint does not provide a full date, the court, pursuant to Federal Rule of Evidence 201, takes judicial notice of the publically available press release date, which is June 14, 2006. See Martin, 99 Fed. Cl. at 631 ("noting that [t]he court may, when ruling upon an RCFC 12(b)(1) motion, examine relevant evidence in order to decide any factual disputes"). Because June 14, 2006 was more than nine years before plaintiff filed his complaint, any claim that this device violated his patent would fall outside of the statute of limitations period.

7

electronically and that covered by plaintiff's patent are two distinct systems. Thus, although plaintiff possesses a patent for a particular device, he does not possess a patent for the device used by the NYPD. See Gharb v. United States, 112 Fed. Cl. 94, 97 (2013) (holding that a plaintiff must do more than identify products sharing one general component with the patent to state a Section 1498(a) claim). "[S]ection 1498 does not grant the Court of Federal Claims jurisdiction over a claim for alleged infringement of an unissued patent." Martin, 99 Fed. Cl. at 632. Consequently, because plaintiff does not possess a patent for the device that the NYPD uses, he fails to state a claim that his patent was infringed. See Markman v. Westview Instruments, Inc., 517 U.S. 370, 374 (1996) ("Victory in an infringement suit requires a finding that the patent claim 'covers the alleged infringer's product or process . . . .'") (citation omitted). The weakness of plaintiff's case is further underscored by his November 9, 2015 response to defendant's motion, in which he argues that he is entitled to relief because he lacks the funds to make his "last Patent Maintenance Fee Payment." Pl.'s Reply 1. The fact that plaintiff lacks the necessary funds to pay the required $3,780 fee does not provide grounds for government liability, much less a basis for an award of damages. See id. at 2; Gharb, 112 Fed. Cl. at 97 ("A complaint must be dismissed under Rule 12(b)(6) when the facts asserted do not give rise to a legal remedy.") (internal quotation marks omitted).

Finally, as noted above, plaintiff filed, concurrent with his original complaint, an application to proceed in forma pauperis. Under 28 U.S.C. § 1915(a)(1), courts of the United States are permitted to waive filing fees and security under certain circumstances.[4] Specifically, the statute provides:

> Subject to subsection (b), any court of the United States may authorize the commencement, prosecution or defense of any suit, action or proceeding, civil or criminal, or appeal therein, without prepayment of fees or security therefor, by a person who submits an affidavit that includes a statement of all assets such prisoner possesses that the person is unable to pay such fees or give security therefor. Such affidavit shall state the nature of the action, defense or appeal and affiant's belief that the person is entitled to redress.

28 U.S.C. § 1915(a)(1) (2000). Plaintiffs wishing to proceed in forma pauperis must submit an affidavit that lists all of their assets, declares that they are unable to pay the fees or give the security, and states the nature of the action and their belief that they are entitled to redress. 28 U.S.C. § 1915(a)(1); see also Hayes v. United States, 71 Fed. Cl. 366, 366-67 (2006) (concluding that 28 U.S.C. § 1915(a)(1) applies to both prisoners and nonprisoners alike).

---

[4] While the Court of Federal Claims is not generally considered to be a "court of the United States" within the meaning of title twenty-eight of the United States Code, the court has jurisdiction to grant or deny applications to proceed in forma pauperis. See 28 U.S.C. § 2503(d) (1982) (deeming the Court of Federal Claims to be "a court of the United States" for the purposes of 28 U.S.C. § 1915); see also Matthews, 72 Fed. Cl. at 277-78 (recognizing that Congress enacted the Court of Federal Claims Technical and Procedural Improvements Act of 1992, authorizing the court to, among other things, adjudicate applications to proceed in forma pauperis pursuant to 28 U.S.C. § 1915).

Further, the statute sets forth that a "court shall dismiss the case at any time" if the action or appeal to be filed in forma pauperis "is frivolous or malicious." 28 U.S.C. § 1915(e)(2)(B)(i). Unlike a motion to dismiss for failure to state a claim, which requires the court to assume the truth of allegations in the complaint, section 1915(e)(2)(B)(i) gives courts "the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." Neitzke v. Williams, 490 U.S. 319, 327 (1989). A "finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or wholly incredible." Denton v. Hernandez, 504 U.S. 25, 33 (1992). Frivolous claims rest on "allegations that are fanciful, fantastic, and delusional." Id. at 33 (citations and quotation marks omitted). The court may not, however, dismiss a complaint merely because the allegations are "improbable" or "unlikely." Id. ("An in forma pauperis complaint may not be dismissed . . . simply because the court finds the plaintiff's allegations unlikely.").

In this case, plaintiff submitted an affidavit in which he described his assets, declared that he is unable to pay the fees or give the security, described the nature of the action, and stated his belief that he is entitled to redress. However, the court finds plaintiff's claims to be frivolous. In his complaint, plaintiff alleges that the NYPD's device for taking electronic fingerprints infringed his patent for a "fingerprint entry and engine starting system." Compl. 13. Plaintiff does not allege that the NYPD's device to take fingerprints is in any way related to access to a vehicle, nor explains how the device relates to his specific patent. Further, the '920 patent does not indicate that the apparatus described therein can be disconnected from a vehicle security system. See id. at 13-14. Indeed, plaintiff provides no allegations that indicate that the NYPD's device falls under his patent in any manner. In addition, plaintiff makes clear that he desires money from defendant to pay his patent maintenance fee. Consequently, the court finds that plaintiff's claims are frivolous and therefore denies his application to proceed in forma pauperis. See Neitzke, 490 U.S. at 325 ("[A] complaint . . . is frivolous where it lacks an arguable basis either in law or in fact."); Jackson v. United States, 612 Fed. App'x 997, at *2 (Fed. Cir. May 18, 2015) (affirming the trial court's dismissal of a non-prisoner's complaint as frivolousness because the plaintiff alleged ownership of a device that prevents hurricanes); Manning v. United States, 123 Fed. Cl. 679, 683 (2015) (denying the plaintiff's application to proceed in forma pauperis for frivolousness where the plaintiff alleged that he invented an interstellar spaceship).

In sum, the court **DENIES** plaintiff's application to proceed in forma pauperis and **DISMISSES** plaintiff's complaint for lack of jurisdiction. No costs. The clerk is directed to enter judgment accordingly.

**IT IS SO ORDERED.**

MARGARET M. SWEENEY
Judge